# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Jaycee Brown, on behalf of himself
and those similarly situated,

               Plaintiff,

                           Case No. 1:23-cv-1816-MLB

v.

MUY Pizza-Tejas, LLC, et al.,

               Defendants.

_____/

## OPINION & ORDER

Plaintiff Jaycee Brown filed this Fair Labor Standards Act ("FLSA") action against Defendants MUY Pizza-Tejas, LLC, MUY Pizza Southeast, LLC, James Bodenstedt, and certain unnamed corporations and individuals ("Defendants").  Bodenstedt moves for partial dismissal.  (Dkt. 35.)  The Court denies Bodenstedt's motion.

## I.    Background

Defendants MUY Pizza-Tejas and MUY Pizza Southeast are corporations that operated approximately 352 Pizza Hut franchise restaurants across the United States.  (Dkt. 1 ¶¶ 2, 11, 42.)  Bodenstedt

was the founder and CEO of those corporations and operated them until he sold the restaurants in 2021. (*Id.* ¶¶ 39, 41.) Bodenstedt "resided" in Texas (where the corporations were headquartered) for some of the relevant time but now resides in Italy. (*Id.* ¶ 40; Dkt. 40 at 2, 5.) Plaintiff, a resident of Georgia, worked as a delivery driver at one or more of Defendants' Pizza Hut restaurants in Georgia from 2017 to 2021. (Dkt. 1 ¶¶ 11, 83, 127.)

Plaintiff sued Defendants, alleging they "maintain[ed] a policy and practice of underpaying their delivery drivers in violation of the FLSA." (*Id.* ¶ 5.) Plaintiff claims Defendants failed to adequately reimburse drivers for their delivery-related expenses (like car and phone costs) thus causing Plaintiff's actual pay to fall below the legally mandated minimum wage. (*Id.* ¶¶ 4, 91–93, 193.) Plaintiff also asserts an unjust enrichment claim under Federal Rule of Civil Procedure 23 on behalf of himself and current or former delivery drivers in Georgia, arguing Defendants were unjustly enriched by requiring their drivers to incur those expenses without proper reimbursement. (*Id.* ¶¶ 125–26, 171).

Plaintiff includes several allegations of control he claims Bodenstedt had over the companies' operations. He says Bodenstedt

could "command where, when, and how much labor [wa]s performed by the delivery drivers"; "controlled significant aspects of Defendants' Pizza Hut stores' day-to-day functions"; had "financial control over the operations" at each of the stores; had "control" over the stores' pay policies; had "power over personnel and payroll decisions" at the stores (including influencing delivery driver pay); had "power to hire, fire[,] and discipline employees"; had the "power to stop any illegal pay practices that harmed delivery drivers" at the stores, and had "authority to set compensation for employees who worked" at the stores.[1]  (*Id.* ¶¶ 43–45, 47–50, 66.)

Upon Plaintiff's motion, the Court granted conditional certification of a collective action.  (Dkts. 10, 71.)  Many delivery drivers have "opted in," consented to joining this suit, and agreed to have Plaintiff represent

---

[1] The parties have not adequately argued whether these allegations are sufficient to classify Bodenstedt as an employer under the FLSA. Admittedly, Bodenstedt denies he was an employer under the FLSA or made any operational decisions affecting the claims in this case. (Dkts. 35-1 at 7 n.3; 50 at 5 n.2.)  But he does so only in footnotes.  The Court does not consider such arguments.  *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019) ("We do not ordinarily consider arguments raised in passing in one footnote rather than the body of the brief.")  The Court thus assumes these allegations are sufficient for the purpose of this motion.

their interests.  (*See, e.g.*, Dkts. 13, 32, 34, 64, 73–81, 85–95, 98–101.)
Bodenstedt moves for partial dismissal, arguing the Court lacks personal
jurisdiction over him for claims by out-of-state opt-in Plaintiffs (that is,
drivers who neither worked nor lived in Georgia) and that Plaintiff's
unjust enrichment claim is preempted by the FLSA.[2]  (Dkt. 35-1.)

## II.   Legal Standard

On a motion to dismiss for lack of personal jurisdiction under
Rule 12(b)(2), "the plaintiff has the burden of establishing a prima facie
case by presenting enough evidence to withstand a motion for directed
verdict."  *United States ex rel. Bibby v. Mortg. Invs. Corp.*, 987 F.3d 1340,
1356 (11th Cir. 2021).  In evaluating a plaintiff's case, "[t]he district court
must construe the allegations in the complaint as true, to the extent they
are uncontroverted by defendant's affidavits or deposition testimony."
*Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988).   Where the

---

[2] When the Court refers to Brown or the parties' arguments in this case,
it uses "Plaintiff," as Brown makes arguments on behalf of those similarly
situated.  The Court otherwise uses "Plaintiffs" to refer to Plaintiff and
those who have consented to join the collective action.  MUY Pizza-Tejas
previously moved for partial dismissal (raising identical arguments to
Bodenstedt), which the Court denied.  (Dkts. 20, 71.)  Bodenstedt moves
for partial dismissal separately from the corporation because he was
served after it.  (Dkts. 25, 43.)

defendant contests the allegations in the complaint through affidavits, "the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006).

A court may also dismiss a pleading for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [their] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

### III.  Analysis

#### A. Personal Jurisdiction

Bodenstedt says the Court lacks personal jurisdiction over him for the out-of-state opt-in Plaintiffs' claims.  (Dkt. 35-1 at 5–10.)  Plaintiff says the Court has personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(A) or, alternatively, Rule 4(k)(2).  (Dkt. 40 at 15–25.)

#### 1. Rule 4(k)(1)(A)

Rule 4 states that serving a defendant with a complaint "establishes personal jurisdiction over a defendant who is subject to the jurisdiction of a court . . . in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A).  For a defendant to be "subject to the jurisdiction" of a state court, the exercise of personal jurisdiction must be authorized by state law (like the state's long-arm statute) and must satisfy the requirements of the Fourteenth Amendment.  *See* Wright & Miller, Federal Practice & Procedure § 1069.

Georgia's long-arm statute provides that courts of general jurisdiction in Georgia may exercise jurisdiction over a nonresident "in the same manner as if he or she were a resident of [Georgia], if in person or through an agent, he or she . . . [t]ransacts any business within this

state." O.C.G.A. § 9-10-91. This language extends jurisdiction to the limits of due process under the Fourteenth Amendment, which requires that a non-resident defendant have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1261, 1267 (11th Cir. 2010) (internal quotation marks and alterations omitted).

This standard permits two types of personal jurisdiction: general personal jurisdiction and specific personal jurisdiction.[3] *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011). General personal jurisdiction reaches all potential claims against the defendant regardless of any connection between the claims and the state. A court has general personal jurisdiction over a person if the person is domiciled in the state where the court sits. *Daimler AG v. Bauman*, 571 U.S. 117,

---

[3] As noted in the Court's last order, the U.S. Supreme Court recognized a third method of obtaining personal jurisdiction over an out-of-state defendant. (Dkt. 71.) The Court held that state statutes requiring out-of-state corporations to consent to personal jurisdiction in the state as a condition of registering to do business in a state do not violate the Due Process Clause. *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122 (2023). This obviously does not apply to Bodenstedt, an individual.

137 (2014) (quoting *Goodyear*, 564 U.S. at 924).  By contrast, specific personal jurisdiction only reaches claims that arise out of or relate to the minimum contacts a plaintiff can demonstrate between the defendant and the forum state.  *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cnty.*, 582 U.S. 255, 265 (2017) ("What is needed . . . is a connection between the forum and the specific claims at issue.").

No one appears to dispute Bodenstedt transacted business in Georgia.  So, Plaintiffs satisfy Georgia's long-arm statute.  O.C.G.A. § 9-10-91.  Turning to the due process analysis, Bodenstedt is not domiciled in Georgia, so general personal jurisdiction is not an option for any of the Plaintiffs.  That leaves specific personal jurisdiction.

Plaintiffs who worked in Georgia can establish specific personal jurisdiction over Bodenstedt because their claims arise out of their work for his stores in Georgia and because they allege Defendants, including Bodenstedt, established the relevant policies that were used in Georgia. (Dkt. 1 ¶ 5.)  This is obvious and appears to be why Bodenstedt consents to personal jurisdiction for those Plaintiffs.  So Plaintiff, by properly serving Bodenstedt, established personal jurisdiction for his claims and any other claims (that he may add or that other opt-in Plaintiffs may

assert) that arise out of or relate to Bodenstedt's minimum contacts with Georgia. *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 384 (3d Cir. 2022), *cert. denied,* 143 S. Ct. 1001 (2023) ("A defendant who is "subject to the jurisdiction" of a state's courts, pursuant to Rule 4(k)(1)(A), would be so not only for the verbatim claims alleged in the initially filed complaint but also for other potential claims that might be asserted.")

The out-of-state opt-in Plaintiffs, however, did not work in Georgia and thus were not impacted by any of Bodenstedt's relevant contacts with the state. Bodenstedt thus argues service of the complaint by Brown cannot establish personal jurisdiction over him for the out-of-state opt-in Plaintiffs' claims under Rule 4(k)(1)(A). (Dkt. 35-1 at 6–7.) Citing *Bristol-Myers*, Bodenstedt says Georgia courts may exercise specific personal jurisdiction only over those FLSA claims that arise out of or relate to his contacts with Georgia. (*Id.*)

That case involved a "mass action" under state law against Bristol-Myers Squibb for alleged defects in a blood thinner. 582 U.S. at 258–59. Residents and nonresidents of California sued the company in California state court, alleging injuries from ingesting the drug. *Id.* at 259. The nonresident plaintiffs did not buy the blood thinner in

9

California, suffer any harm from the blood thinner in California, or claim any other relationship with California. *Id.* at 259, 264–65. The U.S. Supreme Court concluded any similarity between the resident plaintiffs' and nonresident plaintiffs' claims offered an "insufficient basis" for exercising specific jurisdiction. *Id.* at 265. In other words, the mere fact nonresidents asserted claims identical to the residents' claims did not allow them to assert personal jurisdiction over the defendant. They had to establish that themselves. The Supreme Court explained that, unless nonresident plaintiffs could demonstrate that their own personal claims arose from the defendant's contacts with the forum state, they could not establish personal jurisdiction over the company, no matter "the extent of a defendant's unconnected activities in the [s]tate." *Id.* at 264–65.

The Eleventh Circuit has not said *Bristol-Myers* applies to FLSA collective actions. Circuit courts that have addressed the issue disagree—the Third, Sixth, and Eighth Circuits applying *Bristol-Myers* to FLSA collective actions and the First Circuit refusing to do so. *Fischer*, 42 F.4th 366, 371–88 (3d Cir. 2022); *Canaday v. Anthem Cos.*, 9 F.4th 392, 395–404 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 2777 (2022); *Vallone v. CJS Sols. Grp.*, 9 F.4th 861, 864–66 (8th Cir. 2021); *Waters v. Day &*

*Zimmermann NPS, Inc.*, 23 F.4th 84, 91–99 (1st Cir. 2022), *cert denied*, 142 S. Ct. 2777 (2022).   The Court finds the majority's approach persuasive and concludes the *Bristol-Myers's* requirement—that non-resident plaintiffs in a mass tort action must establish their own basis for personal jurisdiction—applies in FLSA collective actions, thus precluding federal courts from asserting personal jurisdiction over an out-of-state defendant for claims asserted by out-of-state, opt-in plaintiffs that do not arise from the defendant's contacts with the forum state. Because the out-of-state opt-in Plaintiffs' claims here do not arise out of Bodenstedt's contacts with Georgia, the initial service of a summons cannot be used to exercise jurisdiction over Bodenstedt under Rule 4(k)(1)(A) with regard to those claims.

Plaintiff disagrees, making two arguments that other courts have rejected.   Plaintiff first says the claims *do* arise out of or relate to Bodenstedt's actions in Georgia because he deployed the same FLSA-violating policy at all his stores. (Dkt. 40 at 21–24.)  That is not factually correct.  Accepting Plaintiff's allegations as true, Bodenstedt (who never lived or worked in Georgia) made decisions in some other state (perhaps Texas, although unclear) that had repercussions in

Georgia (for anyone who worked in Georgia) and in foreign states (for anyone who worked in those states).  That someone outside Georgia felt the same repercussion (from conduct outside of Georgia) as someone inside Georgia, does not mean Bodenstedt did something in Georgia to impact someone outside of Georgia.  *Fischer*, 42 F.4th at 383 (quoting *Bristol-Myers*, 582 U.S. at 265) ("[T]he mere fact that other plaintiffs allegedly suffered the same injury from the same source 'does not allow the [forum] to assert specific jurisdiction over the nonresidents' claims.").  Plaintiff must show that "the out-of-state plaintiffs' injuries have a connection to the forum state, not just that the injuries are similar to those of in-state plaintiffs."  *Id.*  Bodenstedt did not employ the out-of-state opt-in Plaintiffs in Georgia, pay them in Georgia, or allegedly shortchange their compensation in Georgia.  The out-of-state opt-in Plaintiffs have thus not shown they suffered any injury from Bodenstedt's activities *in Georgia.*  Their "claims entirely relate to their treatment by [Bodenstedt] in their respective home states."  *Id.*

Second, Plaintiff says Rule 4(k)(1)(A)'s limitation—that service of a complaint only provides jurisdiction over defendants "subject to the jurisdiction of a court of general jurisdiction" in Georgia—does not govern

the personal jurisdiction analysis that applies to the out-of-state opt-in Plaintiffs because Bodenstedt has already been served with process by Plaintiff. (Dkt. 40 at 20–21.) In other words, Plaintiff says that, since he served Bodenstedt, the out-of-state opt-in Plaintiffs do not need to do so and can free ride on that initial service to establish jurisdiction for their claims. The First Circuit in *Waters* accepted this argument, reasoning that "Rule 4 is concerned with initial service, not jurisdictional limitations after service." 23 F.4th at 98–99. So, it concluded Rule 4 does not limit a federal district court's personal jurisdiction over the out-of-state opt-ins' claims in FLSA collective actions once a defendant has been properly served. *See id.* at 94 ("[H]ad it been the [Federal Rule of Civil Procedure] drafters' intention to have Rule 4 govern more than the service of a summons, they could have simply said that additional plaintiffs may be added to an action if they could have served a summons on a defendant consistent with Rule 4(k)(1)(A).")

This Court disagrees with that conclusion. It would make no sense to turn personal jurisdiction under Rule 4(k)(1)(A) into a timing issue, allowing one Plaintiff to establish personal jurisdiction through service and the personal jurisdiction analysis required by that rule and then

permitting countless others to free-ride when they could never have satisfied that rule's requirements as initial plaintiffs. *Speight v. Lab. Source, LLC*, 2022 WL 1164415, at *9 (E.D.N.C. Apr. 19, 2022) ("[I]t would be incongruous that a plaintiff could bring suit on a federal claim arising from defendant's contacts in the forum state and serve summons on defendant in accord with Rule 4(k)(1)(A), only to then later join other plaintiffs and their claims to the suit, which the court could not have exercised personal jurisdiction over if they initiated their own suits, due to Rule 4(k)(1)(A)'s constraints."). A defendant's due process rights are not so easily overcome. Nothing in the text of Rule 4(k)(1)(A) suggests that it was intended to explode jurisdiction in an FLSA case beyond the typical due process analysis. Indeed, Rule 4(k) explains how a plaintiff may obtain personal jurisdiction absent that analysis—joinder under Rule 14 or 19 and service within one hundred miles or when authorized by a federal statute. Fed. R. Civ. P. 4(k)(1)(B), (C). Joinder under those rules is not an issue here. And the FLSA statute does not authorize nationwide service of process. The out-of-state opt-in Plaintiffs, if

pursuing jurisdiction through service under Rule 4(k)(1)(A), must satisfy

the due process analysis embedded in that rule.[4]

### 2. Rule 4(k)(2)

Plaintiff alternatively argues Bodenstedt is a resident of Italy,

Rule 4(k)(2) thus applies, and the *Bristol-Myers*'s analysis of Rule

4(k)(1)(A) is irrelevant.  (Dkt. 40 at 17.)

Rule 4(k)(2) allows a court to exercise personal jurisdiction over a

defendant if: (1) the claim arises under federal law, (2) "the defendant is

not subject to jurisdiction in any state's courts of general jurisdiction,"

and (3) "exercising jurisdiction is consistent with the United States

Constitution and laws."  Fed. R. Civ. P. 4(k)(2).  No one disputes the first

requirement—that Plaintiff's FLSA claim arises under federal law.[5]

Regarding the second requirement, Plaintiff says Bodenstedt (a resident

of Italy) is not subject to general jurisdiction in any state's court.  (Dkt. 40

---

[4] Beyond minimum contacts, Rule 4(k)(1)(A) might require Plaintiffs to satisfy other state law requirements for personal jurisdiction.  In Georgia, that includes the long-arm statute.  The Court has already found Plaintiffs satisfy that requirement.

[5] As noted above, Plaintiff only asserts his unjust enrichment claim on behalf of current and former delivery drivers in Georgia.  (Dkt. 1 ¶ 171.)

at 17.)  Bodenstedt disagrees, saying Rule 4(k)(2) does not apply because
he "consents to general jurisdiction in [] Texas" and has thus identified a
state where he is subject to jurisdiction.  (Dkt. 50 at 5–6.)

Bodenstedt latches onto language from *Schrier v. Qatar Islamic
Bank*, 632 F. Supp. 3d 1335 (S.D. Fla. 2022), to support his argument
that consent renders Rule 4(k)(2) inapplicable.  (*Id.* at 5.)  In *Schrier*, the
district court explained that the defendant could not avoid jurisdiction
under Rule 4(k)(2) without identifying a state where it was subject to
personal jurisdiction.   632 F. Supp. 3d at 1356.   The district court
explained:

> Constitutional analysis for each of the 50 states is eminently
> avoidable by allocating burdens sensibly.  A defendant who
> wants to preclude use of Rule 4(k)(2) has only to name some
> other state in which the suit could proceed.  Naming a more
> appropriate state would amount to a consent to personal
> jurisdiction there (personal jurisdiction, unlike federal
> subject-matter jurisdiction, is waivable).  If, however, the
> defendant contends that he cannot be sued in the forum state
> and refuses to identify any other where suit is possible, then
> the federal court is entitled to use Rule 4(k)(2).  This
> procedure makes it unnecessary to traipse through the
> 50 states, asking whether each could entertain suit.

*Id.* (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais, LLP*, 256 F.3d 548,
552 (7th Cir. 2001) (Easterbrook, J.)).  Bodenstedt argues that, since he

has identified a state in which the out-of-state opt-in Plaintiffs could sue him, he has done enough to avoid Rule 4(k)(2).

The Court rejects the notion that a defendant can avoid this exercise of jurisdiction simply by consenting to jurisdiction in some state after having been sued in another state. Instead, Bodenstedt was required to identify a state in which the out-of-state opt-in Plaintiffs could have sued him from the beginning, regardless of his post-hoc consent. Otherwise, they are entitled to the full power of jurisdiction under Rule 4. Other courts have agreed with this conclusion. *See, e.g.*, *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1294–95 (Fed. Cir. 2012) ("A defendant cannot defeat Rule 4(k)(2) by simply naming another state; the defendant's burden under the negation requirement entails identifying a forum where the plaintiff *could have* brought suit—a forum where jurisdiction would have been proper at the time of filing, regardless of consent. Consistent with that obligation, a defendant does not identify "a more *appropriate* state" by suggesting an alternative forum with no basis for personal jurisdiction but for its consent." (emphasis in original) (citation omitted)); *In re Stingray IP Sols., LLC*, 56 F.4th 1379 (Fed. Cir. 2023) ("A defendant [] cannot simply use a unilateral statement of

consent to preclude application of Rule 4(k)(2) and achieve transfer into a forum it considers more convenient (or less convenient for its opponent)." (internal quotation marks and citation omitted)).

Bodenstedt conducts no analysis in this regard, other than by generally saying he consents to jurisdiction in Texas because MUY Pizza-Tejas was headquartered in Texas.  (Dkt. 50 at 5.)  He adds that, as Plaintiff alleged, he lived in Texas during the applicable period the corporations had active operations, and when Plaintiff tried to serve him in Texas, he was registered for a post office box and new drivers' license in Texas.  (*Id.* at 5–6.)  It is unclear whether Bodenstedt is suggesting these facts support a legal finding of jurisdiction or whether he is merely explaining why he consents to being sued there.  He does not, however, conduct any analysis with reference to personal jurisdiction principles under Texas law to show that out-of-state opt-in Plaintiffs could have brought suit against him in Texas.  For example, he does not say he is or was domiciled in Texas, nor does he explain how he would be subject to specific personal jurisdiction in Texas (*i.e.*, how the out-of-state opt-in

Plaintiffs' claims arise out of or relate to *his* minimum contacts there).[6] Bodenstedt has thus not met his burden to defeat Plaintiff's assertion of jurisdiction under Rule 4(k)(2).  The Court will not do the work for him. *Weinstock v. Abu Marzook*, 2019 WL 1470245, at *2 (S.D. Fla. Apr. 3, 2019) ("[T]o defeat the assertion of jurisdiction under Rule 4(k)(2), the defendant bears [the] burden to show that [it] *is* subject to jurisdiction in another state's court of general jurisdiction.")  The Court proceeds under Rule 4(k)(2).

For the third requirement of jurisdiction under that rule, Plaintiff is required to show the Court's "exercis[e] [of] jurisdiction [over Bodenstedt] is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2)(B).  "Jurisdiction 'consistent with the Constitution and laws of the United States' is that which comports with due process." *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

---

[6] Indeed, when Plaintiff tried to serve Bodenstedt in Texas, his counsel said he had not been served because he does not own or reside at the location where Plaintiff attempted service.  (Dkt. 40-1 at 2.)  Counsel otherwise agreed to a timeline for service in Italy, which Plaintiff ultimately completed.  (Dkt. 40-2 at 2.)  Bodenstedt cannot have his cake (by asserting that he has certain things, like a driver's license and post office box, in Texas) and eat it too (by averring that service cannot be completed in Texas and that he resides in Italy).

The Fifth Amendment—rather than the Fourteenth Amendment—Due Process clause applies under Rule 4(k)(2).  *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1543 (11th Cir. 1997).  The Eleventh Circuit, however, applies the same personal jurisdiction due process analysis under the Fifth Amendment as it applies under the Fourteenth Amendment, except the applicable forum for the minimum contacts analysis is the entire United States.  *See Sherritt*, 216 F.3d at 1291, 1291 n.6 (applying the same test for Fifth Amendment Due Process as Fourteenth Amendment Due Process).  The Court examines: (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities with the forum state, thus invoking the benefit of the forum state's law; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice."  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013).  "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."  *Id.*

20

Plaintiff argues that the out-of-state opt-in Plaintiffs' claims arise out of or relate to Bodenstedt's contacts with the United States because he "implemented" a pay policy at 352 Pizza Hut stores in 44 states that violated the out-of-state opt-in Plaintiffs' rights under the FLSA. (Dkt. 40 at 17–18.). The allegations in the complaint are not that strong. Plaintiff alleges Bodenstedt operated the entities and had control, power, or authority over certain aspects of the corporations. (Dkt. 1 ¶¶ 43–45, 47–50, 66.) Having the ability to do certain things, however, does not mean that he actually exercised that authority in the specific instances giving rise to the claims here. Plaintiff's allegations are just as consistent with Bodenstedt lounging on a beach, not exercising his authority, and allowing others to make all the decisions. Nevertheless, Plaintiff does allege in the complaint that Defendants—including Bodenstedt—"maintain[ed] a policy and practice of underpaying their delivery drivers in violation of the FLSA." (*Id.* ¶ 5.) That really is the only allegation that Bodenstedt did something. Bodenstedt does not challenge this assertion by, for example, filing an affidavit to the contrary. *Stubbs*, 447 F.3d at 1360. He only denies that he made operational decisions related to the claims here in a footnote, (Dkt. 50

at 5 n.2), and the Court thus does not consider it. *Pinson*, 942 F.3d at 1209 n.5. Construing Plaintiff's allegation as true that Bodenstedt (along with the other Defendants) maintained the policy in the 352 stores that gave rise to the claims here, the Court finds that the out-of-state opt-in Plaintiffs' claims arise out of or relate to Bodenstedt's contact with the United States.

The Court likewise finds Bodenstedt's conduct satisfies the purposeful availment requirement. Under the minimum contacts test for purposeful availment, the Court assesses the nonresident defendant's contacts with the forum and asks whether those contacts: (1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being haled into court in the forum. *Carrillo*, 115 F.3d at 1542. Although Bodenstedt apparently resides in Italy, he was the CEO of two American companies, "operated" those companies, and "controlled significant aspects" of the stores' day-to-day functions. (Dkt. 1 ¶¶ 41, 44); *S.E.C. v. Prime Time Grp., Inc.*, 2010 WL 780198, at *3 (S.D. Fla. Mar. 2, 2010). These facts, combined with Plaintiff's allegation that he

maintained the policy at issue, show that he should reasonably anticipate being haled into court in the United States.

Finally, the Court finds that bringing this action against Bodenstedt in Georgia comports with fair play and substantial justice. To make this determination, the Court examines each of the following: (1) the burden on the defendant in defending the lawsuit; (2) the forum's interest in adjudicating the dispute; and (3) the plaintiff's interest in obtaining relief. *Carrillo*, 115 F.3d at 1547. The Court first notes that, despite carrying the burden on this prong, Bodenstedt makes no argument in this regard. (Dkt. 50 at 6–7); *Louis Vuitton Malletier, S.A*, 736 F.3d at 1355. It does not appear Bodenstedt would be burdened by having to litigate here, as he already has agreed to litigate against the Plaintiffs who worked in Georgia. The United States has a clear interest in adjudicating the rights of individuals employed in the United States, and the out-of-state opt-in Plaintiffs have an interest in obtaining convenient and effective relief, which would be inefficient if they were required to sue Bodenstedt and the corporations in separate forums. Accordingly, the Court finds that the out-of-state opt-in Plaintiffs can

establish personal jurisdiction over Bodenstedt with regard to their claims under Rule 4(k)(2).

### B. Failure to State a Claim

Bodenstedt says the Court should dismiss Plaintiff's unjust enrichment claim for failure to state a claim as preempted by the FLSA. (Dkt. 35-1 at 10.)  He argues that the unjust enrichment claim depends on a violation of the FLSA and requires the same proof.  (*Id.* at 12–14.) For the same reasons noted in the Court's Order on MUY Pizza-Tejas's partial motion to dismiss, the Court finds that Plaintiff's FLSA claim requires the Court to apply a different test for liability, and thus consider different factors, from the unjust enrichment claim.  (Dkt. 71.)  Plaintiff's unjust enrichment claim survives.

## IV.   Conclusion

The Court **DENIES** Defendant Bodenstedt's Partial Motion to Dismiss (Dkt. 35).

**SO ORDERED** this 18th day of July, 2024.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

24