IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Jaycee Brown, on behalf of himself
and those similarly situated,

           Plaintiff,

                        Case No. 1:23-cv-1816-MLB

v.

MUY Pizza-Tejas, LLC, et al.,

           Defendants.

_____/

# ORDER

This matter is before the Court on Plaintiff Jaycee Brown's Unopposed Motion for Settlement Approval (Dkt. 122). The Court held a hearing on the motion on December 10, 2024 (Dkt. 127). After careful consideration, the Court denies without prejudice Plaintiff's motion.

## I. Background

In April 2023, Plaintiff filed this Fair Labor Standards Act ("FLSA") action against Defendants MUY Pizza-Tejas, LLC, MUY Pizza Southeast, LLC, James Bodenstedt, and certain unnamed corporations and individuals ("Defendants"). Plaintiff moved for conditional

certification of a collective action, which the Court granted. (Dkts. 10, 71.) Many delivery drivers have "opted in," consented to joining this suit, and agreed to have Plaintiff represent their interests. (*See, e.g.*, Dkts. 13, 32, 34, 64, 73–81, 85–95, 98–101.) Defendants moved for partial dismissal for lack of personal jurisdiction, which the Court denied. (Dkts. 20, 35, 104.) Defendants also moved to compel arbitration, which the Court granted in part. (Dkts. 44, 105.) Thereafter, the parties settled the matter on behalf of both the named Plaintiffs[1] and the putative collective. (*See* Dkt. 122-2.) In October 2024, Plaintiff filed an unopposed motion asking the Court to approve their settlement in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), authorize notice to the individuals who did not originally receive the collective action notice, approve the requested attorneys' fees and costs, order the parties to carry out the settlement according to its terms, and

---

[1] Although Brown is the only named Plaintiff in the instant lawsuit, the Settlement Agreement provides that the named Plaintiffs in an earlier-filed lawsuit in Minnesota, *Stotesbery v. MUY Pizza-Tejas, LLC, et al.*, No 0:22-cv-1622 (D. Minn.), are also named Plaintiffs for purposes of the settlement.

2

retain jurisdiction to oversee any disputes that may arise in the administration of the settlement. (*Id.* at 45.)

The Settlement Agreement establishes a gross common fund of $4,750,000, of which $3,000,305.63 will be allocated to resolving the claims of Plaintiff and collective action members; Plaintiff's counsel will seek $1,583,333.33 in attorneys' fees (one-third of the gross common fund) and $46,461.04 in expenses; and the named Plaintiffs will each receive $10,000 for a general release of all claims (not just those in this lawsuit) against Defendants. (Dkts. 122-1 at 45; 122-4 at 2, 6–7.) The agreement also allocates $29,900 to a third-party administrator for overseeing the notice and settlement process. (Dkt. 122-1 at 45.) Each collective action member will receive an amount proportional to the number of deliveries he or she completed during the settlement period. (*Id.* at 13.) For example, an individual who drove 10% of the total deliveries completed by all of the collective action members during the requisite period would receive 10% of the settlement amount after deductions for attorneys' fees and expenses, administration expenses, and payments for the general releases.

The Settlement Agreement is contingent on Court approval. Putative collective action members must complete, sign, and return an opt-in form within 60 days of notice to receive their allocation. (*Id.* at 23.) Individuals who receive an opt-in form but do not respond received nothing but retain their right to bring a lawsuit separately to recover the claims here. (*Id.*) When the notice and opt-in process concludes, Plaintiff's counsel will file the returned opt-in forms with the Court. (*See, e.g.*, Dkt. 124.)

## II. Legal Standard

In *Lynn's Food Stores*, the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when a district court enters a stipulated judgment "after scrutinizing the settlement for fairness." 679 F.2d at 1353. A court may only enter an order approving a settlement if it finds the settlement "is a fair and reasonable resolution of a bona fide dispute" of the plaintiff's FLSA claims. *Id.* at 1353–55. In doing so, the Court should consider, among other things, any collusion behind the settlement; the complexity, expense, and likely duration of the litigation; the status of court

proceedings and discovery completed; the probability of plaintiffs' success on the merits; the range of possible recovery; and the opinions of counsel. *See Leverso v. SouthTrust Bank of Ala., Nat'l Assoc.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994). The Court may approve the settlement if it reflects a reasonable compromise of the FLSA claims that are actually in dispute. *See Lynn's Food Stores*, 679 F.2d at 1354. There is a strong presumption in favor of settlement. *See Cotton v. Hinton,* 559 F.2d 1326, 1331 (5th Cir. 1977).

## III. Analysis

As set forth in Plaintiff's motion, this case involves disputed issues of liability, with Plaintiff alleging Defendants failed to pay him and other similarly situated delivery drivers the required minimum wages for the hours they worked. Plaintiff contends that, if Defendants did not collect records of and reimburse for the delivery drivers' actual vehicle expenses, the FLSA requires them to reimburse its drivers at the Internal Revenue Service ("IRS") standard business mileage rate ($0.57 per mile). (Dkt. 122-1 at 11.) Defendants, by contrast, argue that the mileage estimates are much lower and that employers meet their minimum wage obligations if they reimburse a "reasonably approximate amount" for the

drivers' vehicle expenses. (*Id.*) The parties agree that the settlement is reasonable and considers Plaintiff's probability of success. (*Id.* at 15–23.) According to the parties, if Plaintiff were to prevail on the substantive issues, Defendants would be responsible for paying $3,982,202.22—close to the amount of the common fund. (*Id.* at 12.) If, on the other hand, Defendants were to prevail, Defendants would only have to pay $1,854,212.91 (if their mileage calculations are correct) or nothing (if they prove that they met the "reasonably approximate" standard). (*Id.* at 12.)

Ultimately, the parties recognize the substantial risks of proceeding with this collective action lawsuit, and Defendants make a significant concession of making any payment to the collective given its position that it need only to reimburse a "reasonably approximate amount." To the extent that any potential collective action member is not satisfied with the settlement, they simply do not have to return the opt-in form. (*Id.* at 23.) There is no evidence of collusion, as the parties contend they negotiated at arm's length and compromised only bona fide disputes, resulting in a mediator's proposal and this settlement. (*Id.* at 17.)

The Court notes that, by the Settlement Agreement, any current and potential opt-ins will release only the claims asserted in this lawsuit and the companion case in *Stotesbery*. This limited release does not raise concerns under *Lynn's Food*. *See Reyes v. Fresenius Med. Care Holdings, Inc.*, 2021 WL 7630115, at *4 (M.D. Fla. Aug. 24, 2021), *report and recommendation adopted*, 2021 WL 7630116 (M.D. Fla. Aug. 26, 2021) (approving a release of state law claims that were not asserted in the complaint because they were narrowly tailored to the FLSA wage claim that was alleged); s*ee also Monahan v. Rehoboth Hosp., Inc.*, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) (noting that "a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint"). There also do not appear to be any other concessions in the settlement agreement, such as confidentiality or non-disparagement provisions, that could undermine the fairness of an FLSA settlement.

As for attorneys' fees, counsel seeks $1,583,333.33 (one-third of the gross common fund). To encourage private enforcement of statutory rights, the FLSA allows courts to award, "in addition to any judgment awarded to the plaintiff or plaintiffs, . . . a reasonable attorney's fee to be

paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The FLSA "requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller*, 307 F. App'x 349, 351 (11th Cir. 2009). Courts should especially scrutinize reasonableness where the parties have simultaneously negotiated the attorneys' fees with the damages award, as such negotiation presents some risk that the attorneys' fees affect the damages award—in other words, that attorneys might compromise their clients' claims to some degree in order to receive generous fees. *Grimes v. Se. Rests. Corp.*, 2013 WL 4647374, at *3 (M.D. Ga. Aug. 29, 2013) (citing cases).

In most FLSA cases, counsel submits records of how many hours counsel worked on the case, and the Court applies the "lodestar method" to compute the appropriate amount of fees. Under the lodestar method, the Court determines the objective value of a lawyer's services by multiplying the hours reasonably expended by a reasonable hourly rate. *See Norman v. Hous. Auth. of City of Montgomery, Ala.*, 836 F.2d 1292, 1298–1304 (11th Cir. 1988).

8

Here, however, Plaintiff asks the Court to use a different method—the common fund analysis—which he says is appropriate under *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). In *Camden*, the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." 946 F.2d at 774. But *Camden*, did not involve a collective action under the FLSA; it involved an action under Federal Rule of Civil Procedure 23. And unlike Rule 23 claims, "FLSA rights cannot be abridged by contract or otherwise waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981). An important right under the FLSA is to recoup "reasonable attorney's fee[s] . . . and costs of the action" "*in addition to* any judgment awarded to the plaintiff." 29 U.S.C. § 216(b) (emphasis added). In other words, the plaintiff has a right to attorneys' fees and costs *without reduction* of his or her award of unpaid wages. *See Williams v. Coventry Health Care of Fla, Inc.*, 2018

9

WL 1466395, at *3–4 (M.D. Fla. Mar. 26, 2018) (rejecting the common fund analysis in a FLSA case and conducting a lodestar analysis). Because the recovery of attorneys' fees from a common fund involves a reduction of Plaintiff's damages award, the Court finds the common fund analysis improper.[2]

The Court instead evaluates the proposed fee award in this case through a lodestar analysis and the Court's common sense and expertise. *See Camden I Condo. Ass'n*, 946 F.2d at 774 ("The lodestar analysis shall continue to be the applicable method used for determining statutory fee-shifting awards."); *Norman*, 836 F.2d at 1303 ("The court . . . may consider its own knowledge and experience concerning reasonable and proper fees. . . ."). Applying that method here, the Court multiplies the hours spent on this case—641.86—by the varying hourly rates by each attorney, resulting in a total of $312,740.75 in attorneys' fees. (Dkt. 122-3 ¶¶ 27–30.) The Court is very familiar with this case and finds that the hours spent and hourly rates are reasonable. (*Id.* ¶ 38 (citing

---

[2] Even if the Court were to conduct the common fund analysis, the Court would find the attorneys' fees requested reasonable and in line with other awards in this Circuit.

district court cases approving the attorneys' similar hourly rates in 2019 and 2022).)

That amount is far below the attorneys' fees the parties negotiated. Indeed, the Settlement Agreement proposes attorneys' fees 5.06 times more than that. But, having determined a lodestar, the Court may adjust the lodestar upward or downward based on various factors. In *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974), the Eleventh Circuit identified twelve factors a court may consider in determining the reasonableness of an attorney's fee award in a particular case: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Considering those factors here, the Court determines the lodestar amount does not accurately capture the complexity of this case, and a significant upward adjustment is appropriate. Indeed, the Court finds 5.06 multiplier reasonable. *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *19 (S.D. Ohio Nov. 5, 2020) (approving a 5.29 multiplier in a FLSA and Rule 23 action). Counsel spent extensive time on this case and on the case in Minnesota, *Stotesbery*, which raised similar and sometimes overlapping issues. (Dkt. 122-1 at 33.) Plaintiff thus argues that it was difficult to precisely measure the time spent on each case. (*Id.*) This case also raised several novel and difficult jurisdiction and arbitration questions. (Dkts. 71, 104, 105.) Plaintiff's counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. (Dkt. 122-1 at 37.) Counsel thus took on considerable risk that he might lose one of the novel issues and, in doing so, gut his case or significantly reduce its scope. Counsel ought to be rewarded for advocating for their clients in the face of this risk. This case required considerable skill and expertise on the FLSA, the specific facts of the case, the logistics of managing over 1,000 collective action members, arbitration, and personal jurisdiction. (*Id.* at 34–36.)

Plaintiff's counsel also represents that his law firm is small (with 6 to 12 employees), precluding him from taking other cases given the considerable resources allocated to this litigation. (*Id.* at 36–37.)

The attorneys' fees sought are also roughly one-third of the gross common fund amount. The Court knows one-third of a recovery is a commonly charged contingency fee. The Court also notes that each collective action member—by signing the form—agrees that one-third of the settlement amount will be allocated to attorneys' fees. So the resolution meets the deal the attorneys have struck with the collective action members so far. No collective action member is required to sign the opt-in form and may pursue litigation on their own, paying their own fees, if they desire. This case imposed no unique time limitations, so this factor is neutral. Counsels' work will result in a significant benefit to the collective action members, where the collective will—as a whole—receive roughly 78% of what Plaintiff's counsel values their claims under the IRS rate.[3] To receive this money, the collective action members do not need

---

[3] The Court calculates this percentage by dividing $3,090,305.63 (the amount of the common fund that will be allocated to Plaintiff and the collective action members, including the nine $10,000 "general releases"

13

to take any action other than to cash a check that will be mailed to them. Plaintiff and the collective action members are represented by experienced counsel, who are highly experienced in collective action litigation. This case also presented circumstances that might be undesirable, including the fact defendant corporations are no longer in business, the owner lives abroad, and the thousands of collective action members span several states. (*Id.* at 39.) Plaintiff retained counsel solely for this litigation in their professional capacity. (*Id.*) And finally, the fee sought here is in line with fees typically awarded in similar cases. *See George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1382 (N.D. Ga. 2019) (collecting cases). In sum, all but one of the *Johnson* factors support an upward adjustment of the lodestar. The Court finds the attorneys' fees sought here reasonable.

The Court also finds that the notice procedures appear appropriate as they are concise, easy to understand, and inform the putative collective members of the essential terms of the Settlement Agreement. There is, however, one provision in the Settlement Agreement the Court declines

---

the Court (as discussed below) refuses to approve) by $3,982,202.22 (the amount Plaintiff says is due under IRS rate).

to approve. As mentioned above, the Settlement Agreement provides that the named Plaintiffs will release any and all claims that exist at the time of the agreement against Defendants in exchange for $10,000 each. (Dkts. 122-2 at 17; 122-4 at 7.) Some courts decline to approve FLSA settlement agreements that contain general releases. *E.g., Vega v. Ya Guan USA LLC*, 2021 WL 8946186, at *2 (S.D. Fla. Aug. 24, 2021) (disapproving general release where the parties failed to explain the basis for the general release and no additional monetary consideration was provided to the plaintiff in exchange for the release); *see Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010) ("Although the parties' desire for complete 'disengagement' is understandable, a pervasive release in settlement of an FLSA action is both unfair and incapable of valuation. A compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny."). Plaintiff's motion contains no detail illustrating the value of the general release, for example, by reference to particular claims the named Plaintiffs would otherwise have had against Defendants that would be foreclosed under the release. Accordingly, the Court rejects the provision in the

Settlement Agreement that provides general release payments to the named Plaintiffs.

## IV. Conclusion

Given the Court's rejection of the general release payments to the named Plaintiffs, the Court **DENIES WITHOUT PREJUDICE** Plaintiff Jaycee Brown's Unopposed Motion for Settlement Approval (Dkt. 122). **On or before February 7, 2025,** the parties shall notify the Court as to whether they want the Court to approve the Settlement Agreement without the general release payments to the named Plaintiffs.

**SO ORDERED** this 27th day of January, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE